UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

| Case No. | CV 14–6668 DSF (PLA) | Date | 2/3/15 |
|---|---|---|---|
| Title | Lora Smith, et al. v. Bank of America, N.A. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING Defendant's Motion to Dismiss (Docket No. 14)

    Defendant Bank of America, N.A. (BofA) moves to dismiss Plaintiffs' class action Complaint. The Court concludes that Plaintiffs' claims, all of which are premised on BofA's purported failure to comply with the Internal Revenue Code, 26 U.S.C. § 6050H, fall within the Internal Revenue Service's (IRS) exclusive enforcement regime.[1] The Complaint is DISMISSED.

    Plaintiffs are cash-basis taxpayers who obtained home mortgage loans in 2006 and 2007. (Compl. ¶¶ 36, 49.) BofA subsequently acquired both mortgages. (Id. ¶¶ 37, 50.) In 2010 and 2011, after Plaintiffs had fallen into default, BofA and Plaintiffs agreed to modify[2] Plaintiffs' loans. (Id. ¶¶ 40, 52.) The modifications altered multiple aspects of Plaintiffs' loans. For instance, the modifications eliminated the "option" features on Plaintiffs' original loans and altered the loans' interest rates and amortization periods.

---

[1] Plaintiffs acknowledge that they have not attempted to resolve their dispute with BofA by engaging the IRS directly – for instance, by claiming mortgage interest deductions different from the amount listed on the Forms 1098 they received from BofA. See Def.'s Req. for Judicial Notice (RJN), Exs. L-O.

[2] The parties dispute whether the 2010 and 2011 loan agreements constituted "new loans" for purposes of determining BofA's obligations under 26 U.S.C. § 6050H. Given the Court's conclusion that the IRS has exclusive enforcement authority over Plaintiffs' claims, the Court need not resolve this dispute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

(Id. ¶¶ 42, 55.) Most important to this action, all existing interest and unpaid charges[3] were capitalized, creating the "modified Principal balance" on which interest has accrued moving forward. (Id. ¶¶ 53, 59.) Plaintiffs have made all required payments since modifying their loans. (Id. ¶¶ 42, 56.)

Pursuant to 26 U.S.C. § 6050H, any "person" who "receives from any individual interest aggregating $600 or more for any calendar year on any mortgage" must report receipt of the payment on an IRS Form 1098. Plaintiffs allege that in the years since their modifications, BofA has violated § 6050H by failing to report payments of capitalized interest. In other words, Plaintiffs contend that § 6050H makes no distinction between current interest (the interest that has accrued on the modified Principal balance post-modification) and capitalized interest. As Plaintiffs' counsel argued at the hearing, "interest is interest is interest." (See, e.g., Dkt. No. 26 at 52:8-9.) BofA disagrees, arguing that § 6050H requires BofA to report only interest paid on the modified Principal balance. BofA has reported Plaintiffs' mortgage interest payments in this way each year since the loan modifications.

To illustrate, as of January 1, 2012, Plaintiff Himple's loan balance totaled approximately $614,500, which included the $500,000 original principal. (Compl. ¶ 44.) The remainder consisted primarily of capitalized interest. (Id.) During tax year 2012, Himple made 12 payments totaling $45,754.93. (Id.) Relying on the rule that "[p]artial payments on a note are generally treated as first applying to interest and then to reduce principal," Motel Corp. v. Comm'r of Internal Revenue, 54 T.C. 1433, 1440 (1970), Plaintiffs contend that the 2012 payments went entirely to interest – either current interest or capitalized interest – and therefore should have been reflected on Himple's Form 1098.[4] BofA, however, reported receipt of payments of current interest only. BofA did not include any payments of capitalized interest. (Compl. ¶ 46.)

---

[3] The "unpaid charges" included, for example, property tax and insurance payments that had been charged when Smith was in default. (Compl. ¶ 53.)

[4] Plaintiffs offer alternative theories concerning the proper allocation of partial loan payments between capitalized interest and original principal. Although Plaintiffs appear to favor the theory that partial payments are first allocated to capitalized interest and then to the original principal balance, Plaintiffs concede that it might be appropriate to pro-rate payments between the two. (Compl. ¶¶ 44, 45.) This uncertainty weighs against Plaintiffs' claim that § 6050H is unambiguous – at least as applied here – and cautions against granting injunctive relief that would compel BofA to engage in conduct that Plaintiffs recognize (at least implicitly) might be inconsistent with tax law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Plaintiffs plausibly allege (and BofA concedes) that the Forms 1098 Plaintiffs received from BofA did not reflect any payment that was attributable to capitalized interest. Plaintiffs do not, however, explain adequately how they were harmed by BofA's purported misreporting. The following appears to be Plaintiffs' primary allegation concerning the harm that BofA's alleged misreporting caused:

> [C]lass members have suffered damages consisting of, at least: (1) accountancy fees necessary to prepare and file amended tax returns for those years where such returns can still be filed to correct [BofA's] wrongful reporting, [and] (2) the value of any deductions they lost (both state and federal) for any under-reporting of interest in years where it is too late to file amended returns due to the expiration of the three-year statute of limitations imposed by 26 U.S.C. § 6511.

(Compl. ¶ 76.) Although potentially viable to support claims on behalf of yet unidentified class members, this broad allegation – devoid of any specific fact – is insufficient to support a claim vis-a-vis the named Plaintiffs.

Plaintiffs do not allege that BofA's reporting caused them to overpay state or federal taxes. Nor do Plaintiffs allege that they filed income tax returns during the relevant years; claimed a mortgage interest deduction on any income tax return; or filed income tax returns seeking mortgage interest deductions different from that reported on their Forms 1098, which the IRS then denied.[5] The absence of such allegations – or any allegation that BofA's reporting caused a cognizable injury – supports BofA's argument that Plaintiffs have not satisfied Article III's injury-in-fact standing requirement. See Barnum Timber Co. v. U.S. E.P.A., 633 F.3d 894, 897 (9th Cir. 2011).

Plaintiffs appear to argue that they have pleaded an injury-in-fact based on the allegation that claiming a mortgage interest deduction different from that appearing on their Forms 1098 would have been futile. (See Compl. ¶¶ 70-72, 76.) According to Plaintiffs, "the IRS maintains a policy whereby it will reject any attempt by tax-payers to

---

[5] Plaintiffs generally allege that reliance on Forms 1098 is common and reasonable, but they do not allege that they relied on the Forms 1098 they received from BofA. (Compl. ¶ 70.) According to Plaintiffs' counsel, both named Plaintiffs filed tax returns and sought mortgage interest deductions based on the number on their Form 1098s. (Dkt. No. 26 at 23.) Plaintiffs' counsel explained that Himple, and perhaps Smith as well, did not seek an amount different from that appearing on the Form 1098 because her tax advisor said "there's no point." (Id. at 22.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

claim different amounts of interest from those appearing on the tax-payer's Form 1098." (Id. ¶ 70.) To support this otherwise conclusory allegation, Plaintiffs refer to a 2010 letter from the IRS and a February 2013 email exchange between Plaintiffs' counsel and the IRS. Neither the letter nor the email exchange evidences the sort of IRS policy that Plaintiffs allege. The 2010 letter is almost entirely redacted; the primary exception being the language quoted by Plaintiffs. (Id., Ex. G.) The lack of context renders the letter insufficient to support Plaintiffs' broad IRS allegation or even the narrower contention that the quoted statement would apply to Plaintiffs even absent a general IRS policy. The February 2013 email is similarly unhelpful. According to Plaintiffs, the email exchange reflects the IRS's policy to "not interfere with" "disputes between [a Form 1098] issuer and the recipient." (Id. ¶ 72, Ex. H.) The emails are irrelevant to Plaintiffs' allegations for at least two reasons. First, the emails relate to concerns specific to Horn v. Bank of America, No. 3:12-cv-1718-GPC (BLM), a case that Plaintiffs contend is materially different from the present action. Second, the emails reveal that the IRS determined that the identified concern was "not an issue under the purview of the Systemic Advocacy Program." (Compl. ¶ 72, Ex. H.) Plaintiffs have offered no reason why an email relating to the "Systemic Advocacy Program" has any bearing on their current claims or the IRS's purported policy not to interfere with reporting disputes.

Plaintiffs relatedly argue that standing exists because they will be exposed to an increased risk of audit if they seek a mortgage interest deduction that does not match the amount on their Forms 1098. Plaintiffs provide no authority for the proposition that Article III standing exists when a plaintiff could have, but did not, engage in conduct that might have resulted in economic harm. Plaintiffs' cited authority does not support the claim that such speculative and generalized harm satisfies Article III standing. To the contrary, the cited authorities involve plaintiffs who had already incurred expenses defending IRS audits. See Clemens v. USV Pharm., A Div. of Revlon, Inc., 838 F.2d 1389, 1394-95 (5th Cir. 1988) (describing plaintiff's injury as "being subjected to an IRS audit and wrongfully assessed back taxes, penalties, and interest, then having to undergo the inconvenience and expense involved in straightening things out after the passage of time and intervening events have compounded the initial error"); Kennard v. Indianapolis Life Ins. Co., 420 F. Supp. 2d 601, 606 (N.D. Tex. 2006). Plaintiffs might have suffered similar injuries, but the Complaint contains no such allegations. Absent allegations that establish an injury in fact, Plaintiffs' authority concerning injunctive relief is unpersuasive. See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982).

Plaintiffs' failure to allege an injury in fact supports BofA's standing argument; but the Court does not dispose of BofA's motion to dismiss on this basis. Rather,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

consistent with several courts that have confronted similar claims, the Court grants BofA's motion because Plaintiffs seek to enforce a statute (26 U.S.C. § 6050H) that does not create a private right of action and falls within the IRS's comprehensive enforcement and regulatory scheme.  See, e.g., Ayres v. General Motors Corp., 234 F.3d 514, 520-25 (11th Cir. 2000); Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941 F.2d 1220, 1227 (D.C. Cir. 1991); Gifford v. Meda, No. 09-CV-13486, 2010 WL 1875096, *10-16 (E.D. Mich., May 10, 2010); McElwee v. Wharton, 19 F. Supp. 2d 766, 771 (W.D. Mich. 1998).  Because Plaintiffs' claims are all premised on BofA's failure to comply with § 6050H, the Complaint is dismissed.

In concluding that an agency possesses exclusive authority to enforce a statute or claim, courts have considered the following factors: (1) whether the statute underlying the plaintiff's claim provides for a private right of action; (2) whether the regulatory scheme includes an administrative enforcement mechanism; (3) whether the plaintiff could obtain administrative relief directly from the agency; (4) whether administrative decisions are judicially reviewable; and (5) whether the agency administers and enforces the law on which defendant's purported liability is based.  See, e.g., Ayres, 234 F.3d at 520-25; Danielsen, 941 F.2d at 1227; Gifford, 2010 WL 1875096, at *10-16.

All factors weigh in favor of dismissal.  To begin, § 6050H does not provide for a private right of action.  "It is axiomatic that private rights of action must be created by Congress."  Greene v. Sprint Commc'ns Co., 340 F.3d 1047, 1050 (9th Cir. 2003). Plaintiffs concede that § 6050H does not create an express private right of action, but argue that an implied right of action exists pursuant to the four-factor test enumerated in Cort v. Ash, 422 U.S. 66, 78 (1975).  Even assuming that Cort remains good law, see First Pac. Bancorp, Inc. v. Helfer, 224 F.3d 1117, 1121-22 (9th Cir. 2000), Plaintiffs fail to establish that Congress intended to create a private cause of action for violations of § 6050H, see Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 23 (1979).  For instance, Plaintiffs do not explain how a private right of action could exist when § 6050H is absent from the list of information returns that support a private cause of action under 26 U.S.C. § 7434(a).  See 26 U.S.C. §§ 7434(f) ("For purposes of this section, the term 'information return' means any statement described in section 6724(d)(1)(A)."); 6724(d)(1)(A) (not listing § 6050H among those statements falling within the definition of "information return").  Plaintiffs argue that § 7434 is irrelevant because their claim arises under § 6050H, not § 7434.  This argument fails to address BofA's argument, which the Court finds persuasive, that Congress's decision to include an express private cause of action for certain information returns suggests that Congress did not intend to extend an implied private cause of action to other information returns.  See Touche Ross & Co. v. Redington, 442 U.S. 560, 572 (1979) ("Obviously, then, when

**MEMORANDUM**

Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.")

Plaintiffs' authority does not compel a different conclusion. Clemens, for instance, did not concern a claim arising under federal law. That case involved Louisiana state law tort claims that were based, in part, on allegedly erroneous information returns. 838 F.2d at 1391. In First Pacific Bancorp, Inc., the Ninth Circuit found an implied private right of action in part because the underlying statute contained no express enforcement provisions. 224 F.3d at 1125. Here, in contrast, the relevant statutory scheme provides multiple express enforcement provisions. See 26 U.S.C. § 7434(a); see also 26 C.F.R. § 1.6050H-2(e)(2)(iii). Given Congress's inclusion of an express private cause of action for certain information returns – but not information returns mandated by § 6050H – the Court concludes that Congress did not intend to create an implied private right of action for violations of § 6050H.

This conclusion is reinforced by the administrative penalties that flow from violations of § 6050H. Pursuant to 26 C.F.R. § 1.6050H-2(e)(2)(iii), "an interest recipient that fails to include correct information on a return required [on a Form 1098]" is subject to "[t]he section 6723 penalty." Section 6723, in turn, prescribes that "[i]n the case of a failure by any person to comply with a specified information reporting requirement . . . such person shall pay a penalty of $50 for each such failure, but the total amount imposed on such person for all such failures during any calendar year shall not exceed $100,000."

The IRS has also prescribed a multi-step process for taxpayers who receive a Form 1098 that contains purportedly incorrect information concerning the taxpayer's mortgage interest payments. Line 10 of Schedule A (Form 1040), the tax form used to calculate itemized deductions that accompanies a Form 1040, directs taxpayers to input the "[h]ome mortgage interest and points reported to you on Form 1098." (Def.'s Req. for Judicial Notice (RJN), Ex. L at 87.[6]) The IRS explains that "[i]f you paid more interest to the recipient than is shown on Form 1098, see Pub[lication] 936 to find out if you can deduct the additional interest. If you can, attach a statement to your paper return explaining the difference and enter 'See attached' to the right of line 10." (RJN, Ex. M at 95.) Publication 936 instructs filers that "[i]f you paid more deductible interest to the

---

[6] This citation refers to the 2013 version of IRS Form Schedule A (Form 1040). Neither party has suggested, and the Court has no reason to believe, that the 2013 version materially differs from a Schedule A (Form 1040) issued in any other year relevant to this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

financial institution than the amount shown on Form 1098, show the larger deductible amount on line 10" and "[a]ttach a statement explaining the difference and print 'See attached' next to line 10." (RJN, Ex. N at 113.) To the extent Plaintiffs believed that their deductible mortgage interest payments exceeded the amount reported on their Forms 1098, they could have claimed the difference in accordance with the foregoing. They did not.

The IRS also maintains an administrative appeal process for filers who disagree with IRS findings. According to the IRS publication "Your Appeal Rights and How to Prepare a Protest if You Don't Agree," filers may "request a meeting or a telephone conference with the supervisor of the person who issued the findings." (RJN, Ex. O at 123.) If this first step does not resolve the dispute, filers may appeal "most IRS decisions with [their] local Appeals Office." (Id.) In most cases, filers may seek judicial relief following an unfavorable administrative appeal. (Id. at 124; see also 28 U.S.C. § 1346(a) (granting district courts original jurisdiction over "[a]ny civil action . . . for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . .").) They may also file in tax court without first paying the disputed amount. (RJN, Ex. O at 123.) Plaintiffs have not suggested that administrative or judicial review would have been unavailable had they obtained an unfavorable IRS decision after claiming more mortgage interest payments than the amount noted on their Forms 1098. Plaintiffs' failure to pursue the IRS's judicially reviewable administrative process supports dismissal.

Plaintiffs do not offer a compelling response to BofA's exclusive enforcement analysis. Instead of addressing the cases cited by BofA, Plaintiffs offer different cases that, although possessing some factual analogies to this action, did not address the issue of exclusive enforcement. For instance, Mikulski v. Centerior Energy Corp., 501 F.3d 555, 560 (6th Cir. 2007), was limited to the issue of "[w]hether federal question jurisdiction exists over state law claims when . . . recovery depends upon a contested interpretation of federal tax law." Plaintiffs quote language from Mikulski that, taken out of context, arguably supports Plaintiffs' contention that the present action is properly before this Court. (Pls.' Opp. at 6 (quoting Mikulski, 501 F.3d at 570).) Reading the quoted passage within Mikulski's broader context reveals that it has no bearing on the exclusive enforcement question; the quoted language arises within a discussion concerning whether the plaintiffs' claim involved a substantial federal interest for purposes of establishing subject matter jurisdiction. See Mikulski, 501 F.3d at 570. Clemens, which Plaintiffs also appear to advance in response to BofA's exclusive enforcement claim, is equally inapposite. As noted above, Clemens involved the proper application of Louisiana tort law; the court never mentions the concept of exclusive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

enforcement.  838 F.2d at 1391.

In light of the foregoing, the Court concludes that the IRS possesses exclusive enforcement authority over Plaintiffs' claims.  The Complaint is DISMISSED.

IT IS SO ORDERED.